1
2
3
4          IN THE UNITED STATES DISTRICT COURT

5          FOR THE NORTHERN DISTRICT OF CALIFORNIA

6

7    OHIO SECURITY INSURANCE                    Case No. 20-cv-05725-MMC
     COMPANY, et al.,
8
              Plaintiffs,
9                                               ORDER DENYING DEFENDANT
        v.                                      G & G RISK MANAGEMENT
10                                              CONSULTANTS, INC.'S MOTION TO
                                                STAY
11   G & G RISK MANAGEMENT
     CONSULTANTS, INC., et al.,
12
              Defendants.
13

14          Before the Court is defendant G & G Risk Management Consultants, Inc.'s

15   ("G & G") "Motion to Stay," filed November 15, 2021.  Plaintiffs Ohio Security Insurance

16   Company ("Ohio Security") and American Fire and Casualty Company ("American Fire")

17   have filed opposition, to which G & G has replied.[1]  Having considered the papers filed in

18   support of and in opposition to the motion, the Court rules as follows.[2]

19                                **BACKGROUND[3]**

20          In the instant action, plaintiffs "seek a declaration that they have no duty to defend

21   or indemnify G & G . . . in connection with an underlying lawsuit, titled *Deaton v. JLG

22   Industries, Inc., et al.*, Superior Court of California, County of San Mateo, Case No.

23   19CIV02111" (hereinafter, "the Underlying Action"); in addition, Ohio Security seeks

24   _____

25          [1] On January 28, 2021, the other named defendant, Craig Deaton ("Deaton"), filed
     a "Statement of Non-Opposition to Motion to Stay."
26
            [2] By order filed February 16, 2021, the Court took the matter under submission.
27
            [3] The following facts are taken from the Complaint and the exhibits attached
28   thereto.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    reimbursement for costs incurred in defending G & G in the Underlying Action.  (See

2    Compl. ¶ 1.)

3          Plaintiffs issued separate insurance policies to G & G (collectively, "the Policies"),

4    each effective July 9, 2016, through July 9, 2017.  (See Compl. ¶¶ 10, 13.)  Specifically,

5    Ohio Security issued a "commercial insurance policy" to G & G ("Ohio Security Policy")

6    that provided coverage for "those sums that [G & G] becomes legally obligated to pay as

7    damages because of 'bodily injury' or 'property damage' to which the insurance applies"

8    (see id. ¶¶ 10-11; see also id. Ex. A (Ohio Security Policy) at 48),[4] and American Fire

9    issued a "commercial umbrella policy" to G & G ("American Fire Policy") that provided

10   coverage for "those sums in excess of the 'Retained Limit' that [G & G] becomes legally

11   obligated to pay by reason of liability imposed by law . . . because of 'bodily injury,'

12   'property damage,' 'personal injury,' or 'advertising injury' that takes place during the

13   Policy Period and is caused by an 'occurrence' happening anywhere" (see id. ¶¶ 13-14;

14   see also id. Ex. B (American Fire Policy) at 223).

15         Both Policies contained an endorsement modifying the above-described coverage

16   ("Professional Services Exclusions").  The Ohio Security Policy contained an

17   endorsement titled "Exclusion – Professional Services," which provided that "[t]he

18   insurance does not apply to 'bodily injury', 'property damage', or 'personal and

19   advertising injury' resulting from the rendering of or the failure to render any professional

20   services by any insured to others."  (See Compl. ¶ 12; see also id. Ex. A at 78.)  The

21   American Fire Policy contained an endorsement titled "Professional Liability Exclusion,"

22   which provided that "[t]he insurance does not apply to . . . [a]ny liability for, caused by,

23   arising out of, or in connection with the rendering of or failure to render any professional

24   service," and further provided that "[t]his exclusion applies even if the 'claims' against any

25   'Insured' allege negligence or other wrongdoing in the supervision, hiring, employment,

26

27         ────────────────
           [4] The page numbers used herein for exhibits attached to the Complaint are those

28   affixed to the top of each page by this district's electronic filing program.

1    training or monitoring of others by that 'Insured,' if the 'occurrence', 'offense' or other act,

2    error or omission involved the rendering of or failure to render any professional service."

3    (See id. ¶ 15; see also id. Ex. B at 242.)

4            Pursuant to a contract, effective January 15, 2017, through January 31, 2019, with

5    ARB, Inc. ("ARB"), G & G agreed to provide "Professional Consulting services to ARB,"

6    which services included the following: "provid[ing] Onsite Safety Coverage for PG&E

7    projects when Onsite Safety Officer is required"; "[t]raining of ARB, Inc. Employees,

8    Supervisors and Management Personnel on various topics as needed"; and "provid[ing]

9    administrative coverage as needed." (See Compl. ¶¶ 16-17, 19; see also id. Ex. C

10   (G & G agreement with ARB) at 282.)

11           On April 26, 2019, Deaton filed his complaint in the Underlying Action, alleging

12   that, on May 3, 2017, he "was working within the course and scope of his employment

13   with ARB, Inc. at ARB, Inc.'s construction yard" when "another ARB, Inc. employee was

14   backing up a JLG Industries, Inc. telehandler,"[5] which "had a blind spot that obstructed

15   the operator's view of Mr. Deaton while traveling in reverse" (see Compl. ¶ 19; see also

16   id. Ex. D (Complaint in Underlying Action) at 288) and "struck and ran backwards over

17   Mr. Deaton[,] caus[ing] serious injuries including the amputation of his right leg" (see id.

18   ¶ 19; see also id. Ex. D at 288). According to Deaton's complaint, G & G, prior to May 3,

19   2017, had "agreed to oversee job site safety, site safety plans, and to evaluate and

20   communicate hazards to workers all for the benefit of ARB, Inc. workers at all relevant

21   times" but "failed to use reasonable care in fulfilling th[o]se responsibilities with regards to

22   the hazards associated with construction yard traffic and the JLG telehandler's blind

23   spot." (See id. ¶ 19; see also id. Ex. D at 288.) Based on the above allegations in the

24   Underlying Action, Deaton asserts, as against G & G, a single claim for general

25   negligence. (See id. ¶ 19; see also id. Ex. D at 288.)

26           Plaintiffs each received notice of the Underlying Action on or about June 11, 2020

27   _____

28          [5] The Court understands a telehandler to be a machine that is similar to a forklift.

3

1   and, by letter dated July 14, 2020, jointly informed G & G that they "d[id] not have an

2   obligation to defend or indemnify G & G in the Underlying Action" (see Compl. ¶ 21-22)

3   but that Ohio Security, nevertheless, "agreed to participate in the defense of G & G in the

4   Underlying Action, subject to a full and complete reservation of rights" (see id. ¶ 22).

5       Based on the foregoing, plaintiffs assert three claims for relief, titled, respectively,

6   "Declaratory Judgment Against All Defendants – No Duty to Defend," "Declaratory

7   Judgment Against All Defendants – No Duty to Indemnify," and "Ohio Security Claim for

8   Reimbursement Against G & G."

9                                    **DISCUSSION**

10      By the instant motion, G & G seeks an order staying the above-titled case in its

11  entirety until the Underlying Action has been resolved.

12  **A.   Legal Standard**

13      As an initial matter, the parties disagree as to the applicable legal standard for

14  resolving the instant motion.  In particular, G & G argues California law should govern

15  and the Court thus should apply the standard set forth in Montrose Chemical Corp. v.

16  Superior Court, 6 Cal. 4th 287 (1993), wherein the California Supreme Court held "a stay

17  of [a] declaratory relief action pending resolution of [a] third party suit is appropriate when

18  the coverage question turns on facts to be litigated in the underlying action."  See

19  Montrose, 6 Cal. 4th at 301.

20      In response, plaintiffs contend federal law should govern and the Court thus

21  should apply the standard set forth in Landis v. North American Co., 299 U.S. 248 (1936),

22  under which standard a district court, in deciding whether to stay proceedings pending

23  resolution of another action, must weigh "the competing interests which will be affected

24  by the granting or refusal to grant a stay," including, (1) "the possible damage which may

25  result from the granting of a stay," (2) "the hardship or inequity which a party may suffer

26  in being required to go forward," and (3) "the orderly course of justice measured in terms

27  of the simplifying or complicating of issues, proof, and questions of law which could be

28  expected to result from a stay."  See CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir.

United States District Court
Northern District of California

1962) (citing <u>Landis</u>, 299 U.S. at 254-55).

Where, as here, jurisdiction is based on diversity, federal courts "apply state substantive law and federal procedural law," <u>see</u> <u>CRST Van Expedited, Inc. v. Werner Enters., Inc.</u>, 479 F.3d 1099, 1111 (9th Cir. 2007) (citing <u>Erie v. Tompkins</u>, 304 U.S. 64 (1938)), and "[a] stay of an action is procedural, not substantive," <u>see</u> <u>First Nat'l Ins. Co. of Am. v. Ayala</u>, No. 5:19-CV-01060-EJD, 2020 WL 376578, at *5 (N.D. Cal. Jan. 23, 2020) (applying <u>Landis</u> factors where insureds moved to stay federal action pending resolution of underlying state case).[6]

Consequently, in resolving the instant motion, the Court will apply federal law as set forth in <u>Landis</u>.  In doing so, however, the Court will, as other courts in this district have done, consider the guidance provided by the California Supreme Court in <u>Montrose</u>. <u>See, e.g.</u>, <u>United Specialty Ins. Co. v. Bani Auto Grp., Inc.</u>, No. 18-cv-01649-BLF, 2018 WL 5291992, at *4 (N.D. Cal. Oct. 23, 2018) (applying <u>Landis</u> factors to motion to stay; noting, "California law can help inform the Court's application of the *Landis* factors to this case").

## B.   <u>Landis</u> Factors

The Court next considers each of the above-listed <u>Landis</u> factors, in turn, and, as set forth below, finds those factors, taken together, weigh against a stay.

### 1.   Damage Resulting from Granting of Stay

As noted, the first factor the Court considers is the "possible damage which may

---

[6] The Court finds unpersuasive the reasoning set forth in the two cases to which G & G cites, <u>see</u> <u>Phila. Indem. Ins. Co. v. Skating Edge, Inc.</u>, No. 218CV00126, 2018 WL 5099705, at *2 (C.D. Cal. May 24, 2018); <u>Atain Specialty Ins. Co. v. 20 Parkridge, LLC</u>, No. 15-CV-00212, 2015 WL 2226356, at *5 (N.D. Cal. May 11, 2015), both of which base their holdings on <u>U.S. Fidelity & Guaranty Co. v. Lee Investments LLC</u>, 641 F.3d 1126 (9th Cir. 2011) (hereinafter <u>Lee</u>), a case that did not concern a motion for a stay, <u>see</u> <u>Lee</u>, 641 F.3d at 1133-34 (applying state substantive law to determine whether state agency had exclusive authority to hear claims); <u>see also</u> <u>Hanover Ins. Co. v. W. Am. Props., Inc.</u>, No. CV 19-5164, 2020 WL 2542610, at *4 (C.D. Cal. Jan. 13, 2020) (applying <u>Landis</u> factors to request for stay of federal action; stating, "[t]he Court cannot discern any basis for construing *Lee*, or the district court decisions that cite it, to require federal courts sitting in diversity to apply state-law rules governing when courts may stay a particular claim").

1   result from the granting of a stay." See CMAX, 300 F.2d at 268.

2        Here, although plaintiffs do not identify any possible harm to American Fire

3   resulting from a stay, they argue a stay would "undermine[] Ohio Security's effort to

4   obtain a judicial determination of the parties' rights and obligations, if any, and will cause

5   Ohio Security prejudice in the form of continuing defense costs in the Underlying Action."

6   (See Opp. at 14:21-23.)  As G & G points out, however, "being required to defend a suit,

7   without more, does not constitute a 'clear case of hardship or inequity' within the meaning

8   of Landis," see Lockyer v. Mirant Corp., 398 F.3d 1098, 1112 (9th Cir. 2005), and, if

9   plaintiffs prevail in the instant action, Ohio Security will be able to recover its costs and

10  fees arising from its defense of G & G in the Underlying Action.

11       Accordingly, the Court finds the first factor weighs in favor of a stay.

12       **2.    Hardship or Inequity Party May Suffer Absent Stay**

13       The second factor the Court considers is "the hardship or inequity which a party

14  may suffer in being required to go forward."  See CMAX, 300 F.2d at 268.

15       G & G first argues the Court, in considering this factor, should consider the

16  California Supreme Court's guidance in Montrose and contends a stay is favored

17  because the instant action and Underlying Action involve "overlapping factual issues."

18  (See Reply at 7:9-10.)

19       In response, plaintiffs, while acknowledging courts have considered the guidance

20  provided by Montrose as to the second Landis factor, argue there are, in this instance, no

21  such overlapping factual issues.  In particular, plaintiffs contend, the only question raised

22  by the instant action is whether any possible claim against G & G in the Underlying Action

23  would be excluded under the Professional Services Exclusions and, according to

24  plaintiffs, the Court need not resolve the merits of any factual issues in the Underlying

25  Action in order to resolve that coverage question.  As set forth below, the Court agrees.

26       Under California law, an insurer "must defend a suit which *potentially* seeks

27  damages within the coverage of the policy."  See Gonzalez v. Fire Ins. Exch., 234 Cal.

28  App. 4th 1220, 1229 (2015) (emphasis in original) (internal quotation and citation

1   omitted).  "[T]he determination whether the insurer owes a duty to defend usually is made

2   in the first instance by comparing the allegations of the complaint with the terms of the

3   policy."  Waller v. Truck Ins. Exch., Inc., 11 Cal. 4th 1, 19 (1995).  "Facts extrinsic to the

4   complaint," however, may also "give rise to a duty to defend when they reveal the

5   possibility that the claim may be covered by the policy."  See id.

6          Although, in many instances, the coverage action and the underlying action may

7   entail overlapping factual issues, see Montrose, 6 Cal. 4th at 302 (providing, as example

8   of circumstances favoring stay, case where "[a] third party seeks damages on account of

9   [an] insured's negligence, and the insurer seeks to avoid providing a defense by arguing

10  that its insured harmed the third party by intentional conduct"), no such circumstances

11  are present here.  Specifically, as noted, plaintiffs' theory as to why coverage is

12  unavailable is based on the Professional Services Exclusions, and there is no dispute

13  that Deaton, in the Underlying Action, asserts a single claim of negligence against G & G

14  based on his allegations that G & G "agreed to oversee job site safety, site safety plans,

15  and to evaluate and communicate hazards to workers all for the benefit of ARB, Inc.

16  workers" but "failed to use reasonable care in fulfilling th[o]se responsibilities."  (See

17  Compl. Ex. D at 288.)  Further, neither G & G nor either of the plaintiffs has raised, nor

18  has the Court otherwise divined, any other possible theory of liability that Deaton could

19  assert against G & G in the Underlying Action, whether based on his complaint or on any

20  facts extrinsic thereto.  See Gray v. Zurich Ins. Co., 65 Cal. 2d 263, 276-77 (1966)

21  (holding insurer "bears a duty to defend its insured whenever it ascertains facts which

22  give rise to the potential of liability under the policy").

23         Consequently, the Court finds the resolution of the coverage question in the

24  instant action turns solely on an interpretation of the policy language, specifically, the

25  Professional Services Exclusions, and, contrary to G & G's argument, not on issues

26  going to the merits of Deaton's claims.  See, e.g., Hanover Ins. Co. v. Paul M. Zagaris,

27  Inc., No. C 16-01099 WHA, 2016 WL 3443387, at *3 (N.D. Cal. June 23, 2016) (denying

28  motion to stay; finding, where underlying action was based on alleged real estate kick-

back scheme and policy contained exclusion for unfair or deceptive business acts,

coverage question was "logically unrelated" to "whether or not the allegations in the

[underlying] complaint . . . [were] true"); Great Am. Assurance Co. v. M.S. Indus. Sheet

Metal, Inc., No. SACV 11-754-JST (MLGx), 2011 WL 13228037, at *4 (C.D. Cal. Sept.

22, 2011) (denying motion to stay; finding, where parties "concede[d] that the [underlying

action] allege[d] a cause of action for negligence," court, in resolving whether insurer had

duty to defend insured in underlying action, "need only determine, as a matter of law,

whether damages for negligence are potentially covered under the Policy").

G & G next contends it will be prejudiced by having to fight a "three-front war"

against Deaton, ARB, and plaintiffs (see Mot. at 14:19-20), and asserts it lacks the

resources to simultaneously litigate both the Underlying Action and instant action.  As

previously noted, however, being required to defend a suit does not, alone, suffice as a

basis to grant a stay under Landis.  See Lockyer, 398 F.3d at 1112; see also Great Am.

Assurance Co., 2011 WL 13228037, at *3 (denying insured's motion to stay action

pending resolution of underlying action; holding, "[w]hile denying a stay may

inconvenience [the insured] by forcing it to defend itself in two ongoing actions, being

required to defend a suit, without more, does not constitute a clear case of hardship or

inequity within the meaning of Landis" (internal quotations and citation omitted)).

Moreover, as plaintiffs point out and as G & G acknowledges, G & G's defense in

the Underlying Action is being funded by both Ohio Security and another insurer, Allied

World, who is not a party to the instant action and, regardless of its outcome, will

continue to provide a defense for G & G in the Underlying Action.[7]  (See Mot. at 7:21-24.)

Any hardship G & G may incur in defending both lawsuits is thereby substantially

"alleviated."  See Great Am. Assurance Co., 2011 WL 13228037, at *3 (finding "any

difficulty posed by simultaneously defending two proceedings is alleviated in this case

---

[7] Although, as G & G points out, the Allied World policy is a "burning limits" policy (see Mot. at 15:21-22), G & G has offered no evidence to show sufficient funds would not be available to pay a judgment against it.

United States District Court
Northern District of California

because [the insurer] is currently defending [the insured] in the [Underlying] Action").

Citing United Specialty, 2018 WL 5291992, G & G argues a stay is nonetheless appropriate because, absent such relief, it "might potentially be forced to take inconsistent positions if the case is not stayed." (See Reply at 10:23-24.) G & G's reliance on United Specialty is, however, unavailing. In United Specialty, the court found a denial of a stay "could cause prejudice" to the insureds where, in the underlying action, they "might be forced to take inconsistent positions" in order to "best argue that the Policy exclusions d[id] not apply," thereby "arguing *for* various theories of their own liability." See 2018 WL 5291992, at *6 (emphasis in original). Here, however, there is, as discussed above, no indication there exists any other possible theory of liability against G & G beyond the one theory alleged in the Underlying Complaint.

Accordingly, the Court finds the second factor weighs against a stay.

### 3.    Orderly Course of Justice

The third factor to be considered is "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." See CMAX, 300 F.2d at 268.[8]

G & G argues this factor weighs in favor of a stay because, given the possibility it may prevail in the Underlying Action, resolving whether plaintiffs must provide coverage for "a judgment award that may never materialize" is a waste of this Court's and the parties' resources. (See Reply at 12:6-8.) Plaintiffs, however, not only seek a declaration as to their duty to indemnify G & G in the Underlying Action; they also seek a declaration that they have no duty to defend G & G in that case. In addition, Ohio Security seeks reimbursement for the costs it already has incurred in providing a defense to G & G. Consequently, the resolution of the Underlying Action, even if in G & G's favor, would not resolve the issues in the instant action.

---

[8] To the extent G & G, in connection with the third factor, again raises "overlapping factual issues" (see Reply at 7:9-10) as support for a stay, the Court does not address those arguments again herein.

1       Lastly, although, as G & G points out, courts have, on occasion, found the third

2    factor favors a stay where the coverage case was at a much later stage of the

3    proceedings, the Court is not persuaded by G & G's conclusion that the converse

4    necessarily pertains, i.e., that the "procedural posture" of the instant action (see Reply at

5    14:4-5) weighs in favor of a stay.  Rather, in this instance, "judicial economy and the

6    parties' resources are best served by the timely adjudication of [plaintiffs'] claims."  See

7    Great Am. Assurance Co., 2011 WL 13228037, at *4.

8       Accordingly, the Court finds the third factor weighs against a stay.

9                                   **CONCLUSION**

10       For the reasons stated above, G & G's Motion to Stay is hereby DENIED.

11    **IT IS SO ORDERED.**

13    Dated: April 5, 2021

                                             MAXINE M. CHESNEY
                                          United States District Judge

United States District Court
Northern District of California